UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TOMMY EDWARD JACKSON,
      Plaintiff,

v.                                                                                Case No. 21-C-1383

SERGEANT KNETZER, et al.,
      Defendants.

## DECISION AND ORDER

On December 6, 2021, plaintiff Tommy Edward Jackson, who is incarcerated and representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. He also filed two supplemental complaints. On March 17, 2022, Magistrate Judge Nancy Joseph screened Jackson's original complaint and his two supplements and ordered him to submit an amended complaint that incorporates the allegations from his original complaint and two supplemental complaints. On March 25, 2022, Jackson filed an amended complaint. This order screens that amended complaint.

### I. BACKGROUND

The amended complaint is written in a somewhat disjointed fashion that makes it difficult to understand. Also, pages 5 and 6 of the PDF version of the complaint (ECF No. 18) are out of order. Page 6 should be read before Page 5. However, construing the plaintiff's pro se allegations liberally, as I must, *see, e.g., Haines v. Kerner*, 404 U.S. 519 (1972), I understand the plaintiff to be alleging the following claims arising out of a series of events that occurred between July and August of 2021.

On July 5, 2021, defendants Sergeant Knetzer and Officer Eickholt tried to find the plaintiff at the homes of his friend and his sister. Although it is not clear why the officers were looking for the plaintiff, it is possible that they were trying to execute a warrant for his arrest. The plaintiff alleges that a person identified in the complaint as "WFR" had made allegations of domestic violence against him. The plaintiff alleges that WFR's allegations were lies and that she was trying to get revenge on him. The plaintiff does not allege facts suggesting that either officer committed an unlawful search or seizure—the only allegations against them are that they "went" to the houses "looking for" the plaintiff. (ECF No. 18 at 4 of 8.) The plaintiff makes references to the standards applicable to warrantless searches, but again, no search within the meaning of the Fourth Amendment is alleged.

The plaintiff alleges that, in a separate event that appears to have occurred on July 7, 2021, Officers Janelle Kleeman and Veseth heard a call over police radio indicating that an occupant of a residence was complaining about an "unwanted male" trying to force his way into the upper unit of a house on 127 S. Van Buren Street in Green Bay, Wisconsin. (ECF No. 18 at 6 of 8.) Kleeman recognized the address from a domestic-violence report she had received the day before, and she believed that the person trying to get into the house was the plaintiff. Kleeman told police dispatch that she and Veseth would respond to the call.

As Kleeman and her partner walked towards the residence, she heard a male's voice coming from the residence and saw a black male standing at the top of the stairs that led to the door of the upper unit. As the male turned and started to descend the stairs, Kleeman said, "Tommy." The plaintiff reacted, and Kleeman was able to identify him from

2

mugshots she had reviewed the day before. At this point, the officers arrested the plaintiff. Veseth asked the plaintiff if he wanted to make a statement about "an incident that happened at the residence," and the plaintiff said no. (*Id.* at 6–5 of 8.) The officers searched the plaintiff incident to the arrest, put him in the back of their squad car, and took him to the Brown County Jail. The plaintiff appears to believe that these events violated his rights because the police conducted "no investigation," had "no witnesses," and because the "allegations" were based on "revenge." (*Id.* at 5 of 8.) The plaintiff also alleges that the police embarrassed him by arresting him in front of "plenty of people." (*Id.* at 6 of 8.)

The plaintiff alleges that, after he was arrested, his probation agent initially decided not to place a "probation hold" on him. (*Id.* at 5 of 8.) However, Kleeman placed "many calls to the agency office" urging that a hold be issued. (*Id.*) The complaint seems to allege that the probation agent issued a hold on July 7, 2021. (*Id.*) Although it is clear that the plaintiff has been in custody at the Brown County Jail since the date of the hold, it is not clear whether his current custody is pursuant to the hold, pursuant to an actual revocation of his probation, or pursuant to pretrial custody associated with pending criminal charges.

Finally, the complaint focuses on events that occurred in August 2021. According to these allegations, on August 11, 2021, the plaintiff mailed a postcard to WFR. On August 20, 2021, a state court entered a no-contact order that prohibited the plaintiff from having any contact with WFR. On August 25, 2021, WFR received a phone call from the Brown County Jail. When WFR answered her phone, a recording stated that the call was from "Tee," which is the plaintiff's nickname. WFR then hung up, thinking that it was the plaintiff trying to contact her. According to the plaintiff, he did not make this call. Instead,

3

another inmate, Andre or Andrew Hill, placed the call from the jail using the plaintiff's jail PIN number. Because a prerecorded message stating that the call was from "Tee" was associated with the plaintiff's PIN number, WFR thought the call was from the plaintiff when it really wasn't. As a result of these events, defendant J. Schneider signed a criminal complaint alleging that the plaintiff had violated the no-contact order by placing the call (and possibly by sending the postcard) to WFR. The plaintiff alleges that Schneider was wrong in thinking that he had violated the no-contact order and that she could not have known that it was really him on the line rather than someone else.

For relief, the plaintiff requests that the charges based on Schneider's complaint be "brought to an end" (ECF No. 18 at 5 of 8), that he be awarded damages for pain, suffering, and emotional distress, and that he be allowed to question "eyewitnesses." (*Id.* at 7 of 8.)

## II. DISCUSSION

### A. Legal Standards

The Prison Litigation Reform Act (PLRA) applies to this case because Jackson was incarcerated when he filed his amended complaint. The PLRA requires courts to screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See*

4

*Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

**B.     Analysis**

I first address the plaintiff's request for dismissal of the criminal charges against him. To the extent that this is a request for immediate or speedier release from custody, the claim is not cognizable under 42 U.S.C. § 1983; instead, the plaintiff's sole federal remedy is a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). To the extent that this is a request for an injunction against further prosecution of the state

criminal case, the claim cannot proceed because a federal court must abstain from interfering with an ongoing state criminal prosecution. *See, e.g., J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) (discussing abstention under *Younger v. Harris*, 401 U.S. 37 (1971)).[1] Relatedly, to the extent that the plaintiff is seeking damages for his ongoing custody in the Brown County Jail pursuant to legal process that has not already been set aside, his claim is subject to dismissal under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Under *Heck*, a federal court may not grant relief in a suit under § 1983 that would necessarily imply the invalidity of an extant conviction or sentence or ongoing pretrial custody that has been judicially authorized. *See Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018).

Although many of the plaintiff's clams are subject to dismissal without prejudice based on the above principles, he also appears to be alleging claims involving false arrest and other pre-custody events that, if successful, would not require the dismissal of criminal charges or necessarily imply the invalidity of any properly authorized state custody. Moreover, because *Preiser*, *Younger*, and *Heck* do not deprive the court of subject-matter jurisdiction, I will address all the plaintiff's claims on the merits even though success on at least some of them would imply the invalidity of the plaintiff's custody or require federal-court intervention in a state criminal proceeding.

First, I address the plaintiff's allegation that Sergeant Knetzer and Officer Eickholt violated his rights by looking for him at his friend's and sister's houses. The plaintiff seems

---

[1] I also note that, because a federal court may not interfere in an ongoing state criminal prosecution, I may not grant the plaintiff's request to question eyewitnesses.

to be claiming that the officers performed illegal searches, in violation of the Fourth Amendment. However, the Fourth Amendment does not forbid officers from visiting homes and questioning witnesses about the whereabouts of a person of interest without a warrant. Only if the officers intrude into a place in which a person has a reasonable expectation of privacy would a warrant or an exception to the warrant requirement be needed. *See, e.g., United States v. Rosario*, 5 F.4th 706, 710–11 (7th Cir. 2021). Here, the plaintiff does not allege that the officers entered his friend's or his sister's house at all. Moreover, even if the officers had searched the homes, the plaintiff has not alleged facts suggesting that he had a reasonable expectation of privacy in either home. Thus, he would not have standing to seek damages for any potential Fourth Amendment violation. *See Rakas v. Illinois*, 439 U.S. 128, 133 (1978). Accordingly, all claims against Sergeant Knetzer and Officer Eickholt will be dismissed on the merits for failure to state a claim.

Next, I address the plaintiff's allegations concerning his arrest outside the upper unit of 127 S. Van Buren Street. The plaintiff appears to be claiming that Officers Kleeman and Veseth arrested him in violation of the Fourth Amendment. However, officers do not need a warrant to arrest a suspect in public, which is where the plaintiff was arrested, if they have probable cause. *See, e.g., United States v. Patrick*, 842 F.3d 540, 542 (7th Cir. 2016). Further, the facts alleged in the complaint demonstrate that the officers had probable cause to believe the plaintiff had just attempted to force his way into the upper unit of the house. The complaint alleges that Officer Kleeman heard a call over police radio stating that an "unwanted male" was trying to enter the upper unit of 127 S. Van Buren Street. The complaint further alleges that Kleeman was familiar with this address from a report of domestic violence she had received the day before involving the plaintiff.

7

Shortly after receiving the call of a male attempting to force entry into the upper unit, the officers arrived on the scene and saw the plaintiff standing at the top of the stairs, next to the entrance of the upper unit. As the plaintiff descended the stairs, Kleeman said his name, which caused him to turn. Kleeman was able to identify the plaintiff from his mugshots, which she had reviewed the day before. At this point, even if the facts known to the officers did not establish probable cause to believe that the plaintiff had committed a domestic violence offense,[2] they at least established probable cause to arrest the plaintiff for attempting to force his way into the upper unit. *See, e.g., United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (police officers possess probable cause to arrest when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense). Further, once the officers arrested the plaintiff, they were allowed to search him incident to that arrest. *See, e.g., Arizona v. Gant*, 556 U.S. 332, 338 (2009). Thus, the claims against Kleeman and Veseth relating to the arrest and search outside the upper unit will be dismissed on the merits. *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022) ("Probable cause for an arrest provides an absolute defense to a false arrest claim.").

The plaintiff also alleges that, after he was taken to the Brown County Jail, Officer Kleeman called his probation agent and urged him or her to issue a probation hold. This

---

[2] Although the plaintiff does not allege this, it is possible that Kleeman and Veseth arrested the plaintiff based on the warrant for his arrest that Knetzer and Eickholt may have been attempting to execute two days earlier. Clearly, if a warrant for the plaintiff's arrest had been issued, Kleeman and Veseth could have arrested him in public. But, drawing all inferences in the plaintiff's favor, I will assume that the arrest was not made pursuant to a warrant.

8

allegation does not state a claim. No provision of the Constitution prohibited Kleeman from conveying her own preference for a hold to the plaintiff's probation agent. The hold was issued by the probation agent, and so any claim that the hold violated the Constitution would have to be brought against the agent. But the agent is not a defendant, and in any event he or she would have absolute immunity from a claim for damages based on issuance of the hold. *See Copus v. City of Edgerton*, 151 F.3d 646, 649–50 (7th Cir. 1998). Perhaps if Kleeman intentionally or recklessly provided false information to the probation agent, and the agent used that information to develop probable cause that a probation violation had occurred, then a claim against Kleeman might be viable. *Cf. Taylor v. Hughes*, 26 F.4th 419, 426–27 (7th Cir. 2022); *Wilson v. City of Milwaukee*, No. 20-C-699, 2020 WL 3894010, at *2 (E.D. Wis. July 10, 2020). But the complaint does not allege that Kleeman provided any information to the probation agent at all, much less that she intentionally or recklessly provided false information to the agent. And, as discussed, Kleeman had reason to believe that the plaintiff had tried to break into a home, and so her informing the probation agent of that fact would not have violated the plaintiff's rights. Thus, any claim against Kleeman based on the probation hold will be dismissed on the merits.

Finally, I address the plaintiff's claim that the criminal complaint charging him with violation of the no-contact order violated his rights. Again, to the extent that this claim seeks dismissal of the pending charges or damages for any pretrial custody authorized by the criminal court, it is subject to dismissal without prejudice under *Preiser*, *Younger*, and *Heck*. But the claim also fails on the merits. The plaintiff seems to believe that the criminal case is not supported by probable cause and that Officer Schneider, the

9

complaining witness who signed the criminal complaint, is somehow liable. However, "individuals do not have a federal right not to be summoned into court and prosecuted without probable cause." *Serino v. Hensley*, 735 F.3d 588, 592 (7th Cir. 2013). Moreover, even if the plaintiff had a right not to be prosecuted without probable cause, the allegations of the complaint show that probable cause existed. The plaintiff alleges that the order forbidding the plaintiff from contacting WFR was entered on August 20, 2021, and that on August 25, 2021, WFR received a call from the Brown County Jail, where the plaintiff was in custody at the time, that purported to be from "Tee," which is the plaintiffs' nickname. WFR conveyed this information to Officer Schneider, who then signed the criminal complaint. (ECF No. 18 at 3 of 8 (alleging that WFR "exclaim[ed]" to Schneider that the plaintiff was "currently calling").) These facts gave Schneider probable cause to believe that the plaintiff had violated the no-contact order by calling WFR. The fact that the call was from someone impersonating the plaintiff—which Schneider did not know—does not defeat probable cause. Probable cause "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Baily v. City of Chicago*, 779 F.3d 689, 695 (7th Cir. 2015) (quoting *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012)). Moreover, once Schneider developed probable cause, she had no duty to investigate any potential defenses that the plaintiff might have, including his claim that someone had impersonated him. *See Dollard v. Whisenand*, 946 F.3d 342, 355 (7th Cir. 2019) ("the Fourth Amendment imposes no duty to investigate whether a defense is valid"). Accordingly, any claim against Schneider relating to her involvement in the charges brought against the plaintiff for violating the no-contact order will be dismissed on the merits.

For the reasons stated above, all claims in the amended complaint must be dismissed for failure to state a claim. I have considered whether to grant the plaintiff leave to file a second amended complaint. However, the allegations in the amended complaint show that he does not have any viable claims, and therefore I conclude that granting such leave would be futile. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) (district court should grant pro se litigant leave to amend unless it is certain that leave to amend would be futile). The plaintiff cannot challenge his ongoing custody or criminal case in this action under § 1983, and he does not otherwise have a cognizable claim against Schneider for signing the criminal complaint. Further, the plaintiff has pleaded himself out of court on his claim of false arrest against Kleeman and Veseth by alleging facts showing that the arrest was supported by probable cause. The plaintiffs' existing allegations against Knetzer and Eickholt do not even hint at a valid Fourth Amendment claim. The same is true of the plaintiff's allegations against Kleeman with respect to her urging the plaintiff's probation agent to issue a probation hold. Accordingly, I will dismiss this action in its entirety and enter final judgment.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the complaint and this action are **DISMISSED** for failure to state a claim upon which relief may be granted. The Clerk of Court shall enter final judgment and document that this inmate has incurred a "strike" for purposes of 28 U.S.C. § 1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4.

This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 17th day of May, 2022.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge